[823 NYS2d 440]

Nicholas Raffellini, Respondent, v State Farm Mutual Automobile Insurance Company, Appellant.

Second Department, October 24, 2006

## APPEARANCES OF COUNSEL

*Picciano & Scahill*, Westbury (*Robin Mary Heaney* and *Francis J. Scahill* of counsel), for appellant.

*Michael A. Forzano*, Brooklyn, for respondent.

## OPINION OF THE COURT

MILLER, J.P.

The plaintiff settled his action to recover damages for personal injuries against the tortfeasor for $25,000, the limit of the tortfeasor's automobile liability policy, and subsequently commenced this breach of contract action against his own insurer, State Farm Mutual Automobile Insurance Company (hereinafter State Farm), to recover damages under the supplementary underinsured motorist endorsement of his policy. In this appeal, the issue is whether the insurer may raise as an affirmative defense the fact that the insured did not sustain a serious injury within the meaning of Insurance Law § 5102 (d). An examination of the pertinent statutes leads to the conclusion that it may not. Accordingly, the Supreme Court properly granted the plaintiff's motion to strike that affirmative defense from the insurer's answer.

I

On December 29, 1997, the plaintiff purchased an automobile liability insurance policy from State Farm. Among other coverages afforded, the policy provided supplementary uninsured motorist coverage in the sum of $100,000 per occurrence. The policy was in effect when, on April 15, 1998, the plaintiff was involved in an automobile accident; his car was hit by a car driven by Roman Seleznev at an intersection in Brooklyn. The plaintiff sued Seleznev to recover damages for personal injuries in the Supreme Court, Kings County. While the pleadings in the personal injury action have not been included in the record on this appeal, in his complaint in the instant action, the plaintiff alleged that as a result of the accident, he sustained serious injuries, including herniated lumbar discs, bulging cervical discs, and internal derangement of the spine and of the neck, upper back, and lower back, and allegedly sustained "permanent

debilitating injuries, medical expense and a loss of enjoyment of life." He went into greater detail in a bill of particulars he served in this action, alleging, inter alia, a herniated disc at L4-L5, a bulging disc at C5-C6, impingement on the thecal sac, severe upper and lower back injury, a head injury, and postconcussion syndrome. He claimed that he was unable to sit or stand for long periods of time, and unable to sleep, and that he had been permanently partially disabled. He asserted that following the accident, he made an emergency room visit only and, thereafter, he was confined to his home for one month. He was out of work for one month. He stated that health care expenses were paid by the no-fault carrier, and that there were no out-of-pocket expenses.

The plaintiff timely notified State Farm of the accident, and of the commencement of his personal injury action. Seleznev's insurer tendered its $25,000 policy limit for liability coverage in settlement of the plaintiff's personal injury action. The plaintiff notified State Farm of the proposed settlement, and on June 19, 2003, requested its consent. The plaintiff claimed that State Farm did not respond within 30 days and thus it was presumed to have consented to the settlement (see 11 NYCRR 60-2.3).

Thereafter, the personal injury action was settled for the sum of $25,000. The plaintiff claimed that his actual damages "far exceeded" the $100,000 limit of his policy with State Farm. He submitted a claim to State Farm in the sum of $75,000 ($100,000 less the $25,000 he received in his settlement with Seleznev's insurer). In connection with his claim to State Farm, the plaintiff alleged that he submitted to an examination under oath as well as multiple physical examinations, completed claim forms, and provided medical reports and authorizations.

State Farm did not pay the $75,000 claim.

In its answer to the complaint, State Farm denied the plaintiff's material allegations and raised five affirmative defenses. As relevant here, in its fifth affirmative defense, State Farm alleged that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) and, therefore, he had no right to maintain this action; his exclusive remedy was confined to article 51 of the Insurance Law.

By notice of "cross" motion dated January 31, 2005, the plaintiff moved to strike State Farm's fifth affirmative defense of lack of serious injury. (The motion was styled as a "cross" motion, but there was no recitation in the papers before the Supreme Court, or in the briefs on appeal, that State Farm

made a motion in response to which the plaintiff could "cross-move.") The plaintiff argued that Insurance Law § 5104 (a) provided that the right to recover for pain and suffering was conditioned on the plaintiff sustaining a serious injury in any action by or on behalf of a covered person against another covered person for injuries arising out of negligence in the use or operation of a motor vehicle. This action was not a negligence action by a covered person against another covered person—nor was it a negligence action. It was a breach of contract action. The only way the restriction could apply in this case was if the insurance contract provided for it, but the plaintiff claimed it did not. The record does not contain a copy of the insurance contract.

The plaintiff then explained that, by statute, the serious injury requirement applied to *uninsured* motorist coverage (the type of coverage that is triggered, for example, when a tortfeasor is unknown, as in a hit-and-run, or where a known tortfeasor has no coverage), pursuant to Insurance Law § 3420 (f) (1). *Supplementary underinsured* motorist (hereinafter SUM) coverage, on the other hand, which applies in situations such as the one here, is triggered when a tortfeasor has insurance coverage which is not sufficient to compensate the injured party for the injuries suffered; the SUM coverage then acts as "excess" coverage over that of the tortfeasor. The latter type of coverage is described in Insurance Law § 3420 (f) (2) (A).

Both coverages are statutory, according to the plaintiff, and thus the statutory provisions control. The *uninsured* motorist statute requires the plaintiff to sustain a serious injury in order to recover such benefits. In contrast, the statutory provision governing underinsurance coverage contains no such requirement. That made sense, the plaintiff argued, because in a case such as this one, insurance *is* in place with respect to the tortfeasor, and "the serious injury threshold has been dealt with in that case." The exhaustion of the tortfeasor's policy "assumes the existence of a serious injury, or nothing should have been paid at all." For that reason, the plaintiff maintained, the serious injury requirement was not included in the underinsurance coverage provision.

In opposition to the motion to strike, State Farm submitted, inter alia, a copy of what it represented was the subject State Farm policy, but actually was a copy of the policy's declarations pages.

State Farm contended that the plaintiff's argument did not refer to 11 NYCRR 60-2.3, which contains mandatory require-

ments for SUM endorsements. Among other things, the regulation requires such endorsements to contain an exclusion from SUM coverage for noneconomic loss when the insured has not sustained a serious injury as defined in Insurance Law § 5102 (d). In this case, in accordance with that regulation, the subject policy contained such an endorsement, including the above exclusion. State Farm referred to the policy as proof of that point—but, as noted above, it submitted only the declarations pages, and no such exclusion appears in the papers provided. Thus, State Farm maintained, contrary to the plaintiff's contention, the subject policy *did* contain a contractual requirement that the policyholder sustain a serious injury in order to recover SUM benefits under the policy.

In reply, the plaintiff pointed out that the endorsement State Farm referred to was not attached to its papers; rather, only the declarations pages were attached. The declarations pages referred to SUM coverage as one of the subject policy's endorsements, but the endorsement itself was not provided. In any event, the plaintiff argued, the endorsement State Farm referred to differed from the governing statute, in a way that was less favorable to the insured. In other words, the statute said nothing about a serious injury threshold; thus, any endorsement setting such a threshold conflicted with the Insurance Law § 3420 (f) (2).

The Supreme Court granted the plaintiff's motion to strike State Farm's affirmative defense of lack of serious injury. The court stated as follows:

> "SUM coverage is available when the monetary limit of the insured's bodily injury liability coverage is, as here, greater than the same coverage of the tortfeasor. In that case, the injured party's policy supplements the damages which he or she may recover up to the limits of the SUM coverage once the tortfeasor's coverage is exhausted.
>
> "Insurance Law § 5104 provides, in part, that the right to recover for non-economic loss is conditioned upon plaintiff having sustained a 'serious injury' in any action by or on behalf of a 'covered person' against another 'covered person' for personal injuries. While plaintiff in this case is a covered person, State Farm is not. Further, while 'serious injury' is a necessary predicate to a claim for 'unin-

sured motorist coverage' (Insurance Law § 3420 [f] [1]), the language contained in Insurance Law § 3420 (f) (2), which relates to 'supplementary underinsured motorist coverage,' contains no provision which conditions recovery upon a 'serious injury.' To the extent that State Farm asserts that its policy contains an endorsement which requires plaintiff to have sustained a 'serious injury' as a condition of SUM coverage, the court finds that the underlying action brought by plaintiff against the tortfeasor (Roman Seleznev) would not have been settled for the policy limits if not for the existence of a 'serious injury.' The court further notes that State Farm apparently consented to the settlement. Accordingly, the cross motion by plaintiff is granted."

State Farm appeals. We affirm.

## II

First, State Farm's contention that this Court already has decided the issue this case presents—in favor of insurers—is without merit. Rather, the issue does not appear to have been litigated in any of the Appellate Division cases State Farm cites. *Murray v Hartford* (23 AD3d 629 [2005]) was an action, like this one, in contract, by an insured against her insurance company, seeking underinsurance benefits. The insurer moved for summary judgment on the ground that the insured had not sustained a serious injury within the meaning of Insurance Law § 5102 (d). The Supreme Court denied the motion, and this Court reversed, following a review of the medical reports and deposition testimony. On the merits, this Court concluded that the insurer made a prima facie showing warranting dismissal, which the plaintiff failed to rebut. *Brathwaite v New York Cent. Mut. Fire Ins. Co.* (13 AD3d 405 [2004]) is another breach of contract action brought by an insured against her insurer for underinsurance benefits; this Court held that the insurer had not made a prima facie showing that the plaintiff did not sustain a serious injury. Both of the foregoing cases seem to assume that the serious injury threshold requirement of the no-fault law applied—because no one argued, as in this case, that it did not.

Finally, *Matter of Allstate Ins. Co. v Torre* (264 AD2d 477 [1999]) was a proceeding to stay arbitration between the insured and the insurer. There is no discussion in that case of the issue involved here.

On the other hand, the plaintiff has cited unpublished Supreme Court cases that do involve the issue presented here. Those cases favor his position. Their rationale was adopted by the Supreme Court in this case (*see Rankine v GEICO Ins. Co.,* NYLJ, Mar. 22, 2002, at 21, col 6 [Sup Ct, Nassau County, Lally, J.]; *Birch v New York Cent. Mut. Ins. Co.,* Sup Ct, Richmond County, Mar. 29, 2004, Vitaliano, J., Index No. 13317/03).

## A

The "serious injury" threshold of New York's no-fault scheme was added by amendment to the Insurance Law in 1973 (L 1973, ch 13). The purpose of the law is to "compensat[e] victims of automobile accidents without regard to fault" (*Montgomery v Daniels,* 38 NY2d 41, 46 [1975]). Under the no-fault system, a "covered person" is defined as, inter alia, any operator or occupant of a motor vehicle "which has in effect the financial security required by article six or eight of the vehicle and traffic law or which is referred to in [section 321 (2)] of such law" (Insurance Law § 5102 [j]). A covered person may recover for "[b]asic economic loss" (defined at Insurance Law § 5102 [a], and includes medical and hospital expenses, and loss of earnings, among other things) up to a maximum of $50,000. Compensation for such loss is payable as "[f]irst party benefits," following the reduction of the gross amount thereof by certain amounts set out in the statute (*see* Insurance Law § 5102 [b]). " 'Noneconomic loss' means pain and suffering and similar nonmonetary detriment" (§ 5102 [c]).

The injured party has a "right to first-party benefits . . . regardless of fault or negligence on the part of the covered person" (*Montgomery v Daniels, supra* at 47).

The no-fault scheme limits *tort* recoveries for personal injuries, but only applies to actions between "covered persons." For example, there cannot be a duplicate tort recovery for basic economic loss. In addition, damages for noneconomic loss are not recoverable in tort unless the plaintiff can establish "serious injury" (Insurance Law § 5104 [a]; *see Montgomery v Daniels, supra* at 47).

In *Walton v Lumbermens Mut. Cas. Co.* (88 NY2d 211, 214 [1996]), the Court of Appeals described the no-fault scheme as follows:

> "New York's no-fault insurance law, formally known as the 'Comprehensive Automobile Insurance Repa-

rations Act,' was enacted in 1973. It was prompted by the significant problems which had arisen in common-law, fault-based litigation of automobile accidents. Its purposes were to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents'' (citations omitted).

## B

The purpose of the uninsured motorist provision of the Insurance Law is ''to provide persons injured by financially irresponsible motorists a fund from which they could seek some compensation for their injuries'' (*Matter of Lloyd [Motor Veh. Acc. Indem. Corp.]*, 23 NY2d 478, 481 [1969]). The uninsured motorist provision dates back to 1958, and thus it predates the no-fault law. Writing in 1987, this Court observed that when the uninsured motorist provision legislation was first enacted, ''there was no legally significant distinction'' between economic and noneconomic losses, and that recovery under the uninsured motorist law as it then existed thus included both those elements of damages (*see Fox v Atlantic Mut. Ins. Co.*, 132 AD2d 17, 21 [1987]). In 1977, just a few years after the no-fault scheme was enacted, the Insurance Law was amended to allow recovery under the uninsured motorist provision for noneconomic loss only in the event of a serious injury (*see* L 1977, ch 892; Insurance Law § 3420 [f] [1]). In *Fox v Atlantic Mut. Ins. Co.* (132 AD2d 17, 22 [1987]), this Court commented as follows about the 1977 amendment:

> ''By engrafting onto the provisions governing mandatory uninsured motorist coverage the requirement that serious injury must be sustained as a precondition to recovery for noneconomic loss, the Legislature effectively eliminated the possibility that an uninsured motorist claimant would receive greater monetary protection than that afforded to a person similarly injured by a properly insured driver.''

The uninsured motorist provision currently is codified at Insurance Law § 3420 (f) (1). Among other things, that subdivision requires that motor vehicle liability insurance policies issued upon motor vehicles principally used or garaged in New York

contain a provision committing the insurer to pay to the insured the sums described in the statute which the insured or his legal representative is entitled to recover as damages for personal injury or wrongful death from an owner or operator of an uninsured motor vehicle. In addition to the latter category of owners/operators, the statute also includes the owner or operator of an unidentified motor vehicle that leaves the scene of an accident, a motor vehicle registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance, a stolen vehicle, a motor vehicle operated without permission from the owner, an insured motor vehicle when the insurer disclaims liability or denies coverage, and an unregistered vehicle (Insurance Law § 3420 [f] [1]). The subdivision continues, stating, "No payment for non-economic loss shall be made under such policy provision to a covered person *unless such person has incurred a serious injury, as such terms are defined in [section 5102] of this chapter.*" (Emphasis added.) The foregoing coverage is mandatory.

## C

On the other hand, underinsured motorist coverage—the type of coverage involved in this case—is not mandatory. It may be purchased at the option of the insured, to supplement other coverages, including those mandated by law. Such coverage is triggered if the limits of liability of other insurance policies of other vehicles liable for damages "are in a lesser amount" than the coverage provided to the insured. Its purpose is as follows:

> "Underinsurance coverage is designed to increase the level of protection afforded to policyholders injured by negligent drivers who lack adequate liability insurance. Typically, an underinsurance claim arises when a tortfeasor has insurance that satisfies the minimum legal requirements but is insufficient to provide full compensation to the injured claimant . . .

> "Insurance Law § 3420 (f) (2) was enacted to allow policyholders to acquire the same level of protection for themselves and their passengers as they purchased to protect themselves against liability to others" (*Matter of Metropolitan Prop.& Cas. Ins. Co. v Mancuso*, 93 NY2d 487, 492 [1999] [citations omitted]).

The statute providing for supplementary underinsured coverage did not use that term when it was enacted in 1977. It used

the term supplementary *uninsured* coverage. The statute was amended in 1997 to replace the term "uninsured" with the combined term "uninsured/underinsured" (*see* L 1997, ch 568, § 1). Prior to that amendment, over time, the two words were used interchangeably. As the Court of Appeals noted in *Reichel v Government Empls. Ins. Co.* (66 NY2d 1000 [1985]), decided over a decade prior to the 1997 amendment, while the optional coverage afforded by the Insurance Law was commonly referred to as "underinsurance," it nonetheless is a type of uninsured motorist coverage. The Court of Appeals referred to the statute as it was then written, and observed as follows:

> "The statutory allowance for supplementary uninsured motorists insurance coverage expands the 'uninsured motorist' category to include one who, while maintaining proof of financial responsibility as required by law, and thus being an 'insured motorist', nevertheless may be considered an 'uninsured motorist' because he is 'underinsured' when compared to the coverage of an insured who has exercised the option to purchase supplementary insurance." (*Id.* at 1003.)

In 1991, the Appellate Division, First Department, dealt with a case brought by an insured against his insurance company for underinsured benefits pursuant to his policy. The insured was injured in an accident with an uninsured vehicle. The insurer argued that the arbitrator in that case erred in applying the policy's underinsurance coverage when the insured was involved in an accident with a car that had no insurance. The insurer further argued that the underinsurance only took effect when the other vehicle had some, but an insufficient amount of, coverage. The First Department rejected that argument, noting that underinsurance is supplementary to uninsured coverage. Insureds may increase uninsured coverage by the payment of extra premiums to obtain underinsurance coverage. As the First Department noted, if the offending vehicle has no insurance at all, then it is underinsured by the full amount rather than just the inadequate amount of the policy (*see Hae Sup Kim v General Acc. Fire& Life Ins. Co.*, 171 AD2d 404 [1991]).

The statutory provision governing uninsured/underinsured coverage—Insurance Law § 3420 (f) (2) (A)—now reads, in relevant part: "Any such policy shall, at the option of the insured, also provide supplementary uninsured/underinsured motorists insurance for bodily injury, in an amount up to the bodily injury

liability insurance limits of coverage provided under such policy." The statute then sets forth the maxima for various scenarios, and contains other provisions, not directly pertinent here. Notably, the provision does *not* contain the "serious injury" threshold that the uninsured motorist benefit provision does.

## D

In 1992 Insurance Department Regulation 35-D (11 NYCRR 60-2.0) was enacted. According to the Appellate Division, Fourth Department, which noted that the terms "underinsured" and "uninsured" had caused confusion in the courts and in the industry, the Superintendent of Insurance promulgated the regulation "whereby both terms are now, for all practical purposes, synonymous" (*Matter of Utica Mut. Ins. Co. [Hurd]*, 221 AD2d 903, 904 [1995]).

The preamble to the regulations states that they are designed to interpret Insurance Law § 3420 (f) (2), which governs the optional coverage, in light of "judicial rulings and experience," by establishing a standard form for SUM coverage (*see* 11 NYCRR 60-2.0 [a], [c]).

The purpose of SUM coverage, according to the regulation, is to protect a policyholder when he or she is involved in an accident with another vehicle whose operator was negligent, and who has no insurance, or who is insured, but only for relatively low liability limits, in comparison to the policyholder (*see* 11 NYCRR 60-2.1 [a]). Thus, the regulations lump underinsured and uninsured situations together under the SUM umbrella.

According to 11 NYCRR 60-2.3, the prescribed SUM endorsement includes the mandatory uninsured motorist coverage required by Insurance Law § 3420 (f) (1). If the policyholder elects not to purchase the additional, optional coverage, then the insurer must issue, rather than the prescribed SUM endorsement, the mandatory uninsured motorists endorsement prescribed by the Motor Vehicle Accident Indemnification Corporation (MVAIC) and approved by the Superintendent of Insurance (*see* 11 NYCRR 60-2.3 [d], [e]). If the optional coverage is purchased, then the prescribed SUM endorsement set forth in Regulation 35-D must be used (*see* 11 NYCRR 60-2.3 [f]).

Among other things, the prescribed endorsement must define the term "uninsured motor vehicle" in such a way that it includes, inter alia, a vehicle that has no insurance coverage at

all, as well as one that is covered, but in an amount less than the third-party limit of the policyholder's contract (*see* 11 NYCRR 60-2.3 [f]).

There are three prescribed exclusions. The third provides that SUM coverage will not apply "for non-economic loss, resulting from bodily injury to an insured and arising from an accident in New York State, unless the insured has sustained serious injury as defined in Section 5102 (d) of the New York Insurance Law." (11 NYCRR 60-2.3 [f].)

Thus, Regulation 35-D appears to mandate, as State Farm contends, that an insured sustain a serious injury in order to recover under the optional SUM endorsement.

### III

The Supreme Court correctly struck State Farm's defense of lack of serious injury.

As observed by the trial courts that have addressed this issue, in the Insurance Law, the Legislature made a point of imposing the serious injury threshold requirement in section 3420 (f) (1), which governs *mandatory,* uninsured motorists coverage, and involves claims against the funds administered by MVAIC. The Legislature omitted that threshold from the ensuing section, section 3420 (f) (2), which governs the *optional* coverage an insured may, for an additional premium, purchase from his or her insurer. The omission of the serious injury threshold requirement in section 3420 (f) (2) means that State Farm's defense in this case of lack of serious injury is legally irrelevant.

Having imposed the threshold requirement in the other contexts outlined above, the Legislature surely could have imposed it in situations such as the one presented here. There is no reason to engraft a threshold requirement at bar, not only because that is a legislative prerogative, but also because the policies the threshold requirement reflects in the no-fault and uninsured vehicle situations are not implicated here. The plaintiff paid an additional premium to his insurer for supplementary protection that would be triggered in the event he was injured in an accident with a driver who was insured in compliance with New York law, but allegedly not enough. Following the insurer's objection to payment once that situation unfortunately arose, the insured now is pursuing a contract claim against his insurer for benefits the insurer allegedly promised to pay in exchange for the additional premium. The no-fault scheme's concern with filtering a class of tort claims out of the

court system is not implicated here. Nor is the mandatory uninsured motorist scheme's concern with equalizing the respective positions of claimants injured by uninsured and those injured by properly insured motorists.

In many instances, the issue presented in this case probably will not arise because the underlying personal injury matter will involve a serious injury. But that will not always necessarily be the case. Here, for example, Seleznev's insurer may have tendered his $25,000 policy limit to settle the plaintiff's claim because the plaintiff sustained a serious injury (although that issue does not appear to have been litigated), or simply because, regardless of the serious injury issue, the insurer simply chose to avoid the cost of litigation. In the latter situation, when the injured party then proceeds against his or her own insurer for underinsurance protection that he or she has opted to bargain and pay for, and he or she has paid for, there is no reason to impose a serious injury requirement.

To the extent Regulation 35-D imposes such a threshold in the underinsurance context, it would appear unauthorized, and this Court need not follow it. As the Court of Appeals noted in *Kurcsics v Merchants Mut. Ins. Co.* (49 NY2d 451, 459 [1980]):

> "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld . . . Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight" (citations omitted).

Here, the exclusion mandated by 11 NYCRR 60-2.3 (f), concerning compensation for pain and suffering when there is no serious injury, finds no support in Insurance Law § 3420 (f) (2). As noted, the Legislature certainly knew how to add such provi-

sion, as it did so in the immediately preceding subdivision (f) (1).

One could then argue that if the regulation is disregarded as not reflective of legislative intent, then the serious injury threshold, while not mandated by law, nevertheless may be imposed by contract. However, Insurance Law § 3420 (a) provides, in relevant part, that "[n]o policy or contract insuring against liability for injury to person . . . shall be issued or delivered in this state, unless it contains in substance the following provisions *or provisions which are equally or more favorable to the insured*" (emphasis added). Thereafter, the statute lists various "standard" provisions, including, inter alia, the uninsured motorists and SUM provisions described above.

Thus, a contract provision imposing a serious injury threshold requirement in the underinsurance context is less favorable to the insured than section 3420 (f) (2) and should not be given effect. Accordingly, State Farm's contention that the parties' contract contained a serious injury threshold applicable here is of no avail.

## IV

In conclusion, State Farm's fifth affirmative defense properly was stricken, as the plaintiff was not required to demonstrate a serious injury, within the meaning of Insurance Law § 5102 (d) in his contract action against his insurer to recover benefits under the optional, underinsurance endorsement of his insurance policy. Accordingly, on the Court's own motion the notice of appeal from a decision of the Supreme Court, Kings County, dated May 4, 2005, is deemed a premature notice of appeal from the order dated June 30, 2005 (*see* CPLR 5520 [c]), and the order is affirmed.

LUCIANO, LIFSON and COVELLO, JJ., concur.

Ordered that on the Court's own motion, the notice of appeal from a decision of the Supreme Court, Kings County, dated May 4, 2005 is deemed a premature notice of appeal from the order dated June 30, 2005 (*see* CPLR 5520 [c]); and it is further,

Ordered that the order is affirmed; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.