[838 NYS2d 748]

Sheila M. Meegan et al., Respondents, v Progressive Insurance Company, Appellant. (Appeal No. 2.)

Fourth Department, June 8, 2007

### APPEARANCES OF COUNSEL

*Sugarman Law Firm, LLP*, Syracuse (*Timothy J. Perry* of counsel), for appellant.

*Knoer, Crawford & Bender, LLP*, Buffalo (*Paul A. Bender* of counsel), for respondents.

### OPINION OF THE COURT

PERADOTTO, J.

Sheila M. Meegan (plaintiff) was injured in a motor vehicle accident when the vehicle that she was driving was rear-ended by another vehicle. She thereafter settled with the driver of the other vehicle for $25,000, the maximum amount of coverage under his insurance policy. Plaintiffs then commenced this action seeking supplementary uninsured/underinsured motorist (SUM) coverage under the policy issued by defendant to plaintiff Michael T. Meegan, plaintiff's husband. The case proceeded to trial, and Supreme Court granted plaintiffs' cross motion for a directed verdict on, inter alia, the issue whether plaintiff sustained a serious injury. The jury thereafter returned a verdict in plaintiffs' favor, and defendant moved for, inter alia, an order reducing the verdict "to conform to the coverage for this claim"

or an order setting aside the verdict and granting a new trial on all issues. The court denied defendant's posttrial motion, and judgment was entered for plaintiffs in the amount of $479,091.85.

For the reasons that follow, we agree with defendant that a new trial should be granted on the issue whether plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d) because the court erred in granting that part of plaintiffs' cross motion for a directed verdict on that issue. That issue involved questions of fact for the jury, and the court therefore erred in concluding that plaintiff's shoulder injury met the serious injury threshold as a matter of law.

We address first the judgment in appeal No. 2. Plaintiffs contend that they were not required to establish that plaintiff sustained a serious injury in the context of this case. That contention is inconsistent with their position at trial and is raised for the first time on appeal. Nevertheless, we address plaintiffs' contention in view of our conclusion that a new trial on the issue of serious injury should be granted. Plaintiffs' contention involves an issue of first impression in this Department and, although the Second Department addressed the issue in *Raffellini v State Farm Mut. Auto. Ins. Co.* (36 AD3d 92 [2006]), we disagree with its resolution of the issue.

The SUM endorsement to defendant's policy provides in relevant part that defendant agrees to "pay all sums that the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by an accident . . . subject to the Exclusions, Conditions, Limits and other provisions of [the] SUM endorsement." Pursuant to an exclusion in the SUM endorsement, SUM coverage does not apply "for non-economic loss[ ] resulting from bodily injury . . . unless the insured has sustained serious injury as defined in section 5102 (d) of the New York Insurance Law." Thus, under the terms of the policy, plaintiffs were required to establish that plaintiff sustained a serious injury.

In *Raffellini*, the Second Department held that the provision in the insurance contract imposing a serious injury threshold requirement in the underinsurance context should not be given effect (*see id.* at 105). Pursuant to the reasoning of the Second Department,

"the Legislature made a point of imposing the seri-

ous injury threshold requirement in [Insurance Law § ] 3420 (f) (1), which governs *mandatory*, uninsured motorists coverage, . . . [but] omitted that threshold from the ensuing section, section 3420 (f) (2), which governs the *optional* coverage an insured may, for an additional premium, purchase from his or her insurer" (*id.* at 103).

Thus, reasoned the Second Department, the omission of the serious injury threshold requirement in section 3420 (f) (2) renders "legally irrelevant" a defense of lack of serious injury (*id.* at 103), and the regulations imposing such a requirement "would appear unauthorized" (*id.* at 104). The Court in *Raffellini* went on to note that Insurance Law § 3420 (a) provides for certain mandatory policy provisions that are to be "equally or more favorable to the insured" and that a provision in a contract imposing a serious injury threshold requirement is less favorable to an insured than section 3420 (f) (2) and thus should not be enforced (*see id.* at 105).

We disagree with the decision of the Second Department in *Raffellini* and conclude that plaintiffs were required to establish that plaintiff sustained a serious injury in order to recover under the policy. The language of the SUM endorsement in this case comes directly from the insurance regulations containing the requirements for SUM endorsements, which include the exclusion that SUM coverage does not apply to noneconomic damages unless the insured has sustained a "serious injury" as defined in Insurance Law § 5102 (d) (*see* 11 NYCRR 60-2.3 [f]).

It is well established that "[r]esponsibility for administering the Insurance Law rests with the Superintendent of Insurance . . . , who has 'broad power to interpret, clarify, and implement the legislative policy' " (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 863-864 [2003]; *see* Insurance Law § 301). Pursuant to Insurance Law § 301, the Superintendent of Insurance has the power to promulgate regulations, and those regulations are valid as long as they are not inconsistent with a specific statutory provision (*see Medical Socy. of State of N.Y.*, 100 NY2d at 864; *see also State Farm Mut. Auto Ins. Cos. v Brooks*, 78 AD2d 456, 458 [1981], *appeal dismissed* 54 NY2d 753 [1981]).

In our view, the regulations requiring a person to establish that he or she sustained a serious injury in order to be entitled to SUM coverage are not inconsistent with section 3420 (f) (2) or any other provision of the Insurance Law. In the construc-

tion of a statute, the primary consideration for the court is to ascertain and give effect to the intent of the Legislature (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]; *Matter of Allstate Ins. Co. v Libow*, 106 AD2d 110, 114 [1984], *affd for reasons stated* 65 NY2d 807 [1985]). Statutes are to "be given a reasonable construction, it being presumed that a reasonable result was intended by the Legislature" (Statutes § 143).

Insurance Law § 3420 (f) (2) does not explicitly dispense with the serious injury threshold requirement and, because "the statute is silent [on the issue], the regulations [implementing the statute and imposing that requirement] in no way conflict with the statute" (*Medical Socy. of State of N.Y.*, 100 NY2d at 871). We further conclude that the regulations do not impose a requirement that is less favorable to the insured than section 3420 (f) (2). The regulations simply impose the same legal requirement that an injured plaintiff would have against an adequately insured driver and an uninsured driver (*see* § 3420 [f] [1]; § 5104). The regulations were not promulgated "on a blank slate without any legislative guidance, nor did [they] effectuate a profound change in . . . policy" (*Medical Socy. of State of N.Y.*, 100 NY2d at 865). The obvious purpose of section 3420 (f) (2) and its corresponding regulations is to permit drivers to protect themselves under the same terms as they protect others injured as a result of their negligence. It was not the intent of the Legislature to provide a person injured by an underinsured driver with greater rights or a lesser burden of proof than an injured person otherwise would have against an adequately insured driver, when both actions arise from the same incident. To so conclude would be unreasonable and contrary to the purpose and intent of the No-Fault Law. We further note that SUM coverage is optional, and that an insured elects to obtain such coverage upon the specified terms and conditions of the coverage.

In sum, we conclude that, because the conditional and exclusionary language of the policy is not explicitly prohibited by the statute, and because the regulations implementing such policy provisions are authorized and not inconsistent with the language or purpose of Insurance Law § 3420 (f) (2) or any other provision of the Insurance Law, the policy provision containing the serious injury threshold requirement exclusion is valid and enforceable.

We further conclude that defendant is entitled to a new trial on damages. Contrary to the contentions of plaintiffs, absent

evidence that defendant acted in bad faith, their underinsurance claim is limited to the amount of coverage provided in the policy, which is $250,000, less an offset of $25,000 for the payment made on behalf of the other driver (*see Mendoza v Allstate Ins. Co.*, 13 AD3d 594, 595 [2004]). We also add that plaintiff's recovery of past and future medical expenses and lost wages may be limited by exclusions, conditions, limits, or other provisions of the policy. Defendant's remaining contentions with respect to the judgment in appeal No. 2 are moot in light of our determination.

■ We conclude with respect to the order in appeal No. 1 that the court abused its discretion in granting plaintiffs' motion in limine in part by precluding an expert for defendant from testifying with respect to an entry in the medical records of one of plaintiff's physicians. In support of their motion, plaintiffs submitted an affidavit of that physician's office manager in which she stated that plaintiff did not become a patient of the physician until approximately one month after the date of the entry. In her affidavit, however, the office manager did not establish that she had personal knowledge of the entry, nor did she establish that she was responsible for making such entries. Even if she had made such a showing, the certified medical records were admissible in evidence pursuant to CPLR 4518 (c) and constituted prima facie evidence of the facts contained therein (*see generally LaDuke v State Farm Ins. Co.*, 158 AD2d 137 [1990]). Plaintiffs' contention with respect to the accuracy of the entry in those medical records goes to the weight to be given to the medical records, not their admissibility (*see generally National Fuel Gas Supply Corp. v Goodremote*, 13 AD3d 1134, 1135 [2004]).

Accordingly, we conclude that the judgment in appeal No. 2 should be reversed, plaintiffs' cross motion for a directed verdict denied in part, defendant's posttrial motion granted in part, the verdict set aside and a new trial granted on the issues of serious injury and damages. We further conclude that the order in appeal No. 1 should be reversed insofar as appealed from and plaintiffs' motion in limine denied in its entirety.

CENTRA, J. (dissenting).

I

For the reasons that follow, we respectfully dissent in appeal No. 1 and dissent in part in appeal No. 2 because, in our view,

defendant is not entitled to a new trial on the issues of serious injury and damages. With respect to appeal No. 2, we agree with the majority that plaintiffs' underinsurance claim is limited to $225,000, and we therefore would modify the judgment in appeal No. 2 accordingly.

## II

Sheila M. Meegan (plaintiff) sustained injuries in a motor vehicle accident when the vehicle she was driving was rear-ended by a vehicle driven by Kevin T. Berry. Plaintiff settled with Berry's insurance company for $25,000, the maximum amount of coverage under Berry's policy. Plaintiffs thereafter commenced this action seeking supplementary uninsured/underinsured motorists (SUM) coverage from defendant, who issued a policy to plaintiff Michael T. Meegan, plaintiff's husband. Supreme Court granted plaintiffs' motion in limine in part and precluded certain testimony of defendant's expert (appeal No. 1). The action proceeded to trial, and a jury awarded plaintiff $26,250 for past lost wages, approximately $21,500 for past medical expenses, $100,000 for past pain and suffering, $50,000 for future lost wages, $65,000 for future medical expenses, and $200,000 for future pain and suffering. The jury also awarded Michael Meegan $15,000 on his derivative claim. The court granted judgment on the verdict (appeal No. 2) and denied defendant's post-trial motion for an order reducing the verdict, vacating the award for past lost wages and medical expenses, or setting aside the verdict and granting a new trial on all issues. Defendant now appeals.

## III

As did the majority, we will first address the issue of serious injury. The majority concludes that the court erred in granting that part of plaintiffs' cross motion for a directed verdict on the issue of serious injury and that defendant therefore is entitled to a new trial on that issue. The majority further rejects the contention of plaintiffs that they are not required to establish that plaintiff sustained a serious injury. We agree with the decision of the Second Department in *Raffellini v State Farm Mut. Auto. Ins. Co.* (36 AD3d 92 [2006]) and conclude that plaintiffs are not required to establish that plaintiff sustained a serious injury.

To begin, we note that there is no statutory requirement that a plaintiff who asserts a breach of contract claim for SUM

benefits must establish that he or she sustained a serious injury. Insurance Law § 5104 (a) provides that, "in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss." That statute is not applicable to the facts of this case because, although plaintiff is a "covered person," defendant is not. Plaintiffs' claim for SUM benefits is governed by Insurance Law § 3420 (f) (2) (A), which provides that a policy of insurance shall, at the option of the insured, provide SUM insurance for bodily injury. That section does not require a plaintiff asserting a breach of contract claim for SUM benefits to establish that he or she sustained a serious injury. Unlike section 3420 (f) (2) (A), however, Insurance Law § 3420 (f) (1) requires a plaintiff seeking uninsured motorist (UM) benefits to establish that he or she sustained a serious injury.

There is therefore no statutory provision to support defendant's contention that plaintiffs must establish that plaintiff sustained a serious injury. Instead, defendant relies on the insurance policy, which provides that there is no SUM coverage "for non-economic loss[ ] resulting from bodily injury . . . unless the insured has sustained serious injury as defined in section 5102 (d) of the New York Insurance Law." That provision is set forth in the insurance regulations containing the requirements for SUM endorsements (*see* 11 NYCRR 60-2.3 [f]).* The majority concludes that those regulations are not inconsistent with section 3420 (f) (2) and should therefore be upheld. We disagree with that conclusion.

As the majority notes, the Superintendent of Insurance (Superintendent) "has 'broad power to interpret, clarify, and implement the legislative policy' " (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 863-864 [2003]). Where, however, " 'the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency' " (*Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231 [1996]; *see Matter of Belmonte v Snashall*, 2 NY3d 560, 566 [2004]). In that situation, "the judiciary need not accord any deference to the

---

* We recognize that the regulations apply to claims for SUM benefits involving both uninsured and underinsured vehicles. Our analysis is limited, however, to situations involving only underinsured vehicles.

agency's determination, and is free to ascertain the proper interpretation from the statutory language and legislative intent" (*Gruber*, 89 NY2d at 231-232).

In our view, no deference should be accorded to the Superintendent's interpretation of the statute, and the regulations are not rational (*cf. Belmonte*, 2 NY3d at 565-567; *Medical Socy. of State of N.Y.*, 100 NY2d at 867, 871-872). Interpretation of a statute begins with an examination of its plain meaning (*see Bluebird Partners v First Fid. Bank*, 97 NY2d 456, 460-461 [2002]). In addition,

> " '[a] statute or legislative act is to be construed as a whole, and . . . all parts of an act are to be read and construed together to determine the legislative intent . . . Not only are different parts of the same act interpreted together, but different acts which are in pari materia are to be construed each in the light of the other' " (*Matter of Cook v Carmen S. Pariso, Inc.*, 287 AD2d 208, 215 [2001]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 97).

As noted above, Insurance Law § 3420 (f) (2) (A), governing SUM benefits, does not require any showing of a serious injury, yet section 3420 (f) (1), governing UM benefits, and section 5104 (a), governing negligence actions, do require such a showing. If the Legislature had wished to include a serious injury threshold requirement for SUM benefits, it could easily have done so (*see generally Bluebird Partners*, 97 NY2d at 461). There was no reason for the Legislature to include such a requirement, however, because a plaintiff seeking to recover SUM benefits from his or her insurer must already have made a showing of serious injury in an action against the tortfeasor. Section 3420 (f) (2) (A) provides that, "[a]s a condition precedent to the obligation of the insurer to pay under the [SUM] insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements" (*see Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso*, 93 NY2d 487, 493 [1999]). Thus, plaintiffs are not entitled to recover SUM benefits against their insurer unless and until they have collected the limits of the policy from the tortfeasor, and plaintiffs must meet the serious injury threshold requirement in that action against the tortfeasor. It would make no sense to require a plaintiff to make a showing of a serious injury in a

tort action against a tortfeasor, and then to require the plaintiff to make that same showing again in a breach of contract action for SUM benefits against his or her insurer. Nor is it of any import whether the action against the tortfeasor ended in a settlement or proceeded to trial, where either the court or the jury would make an explicit finding of serious injury. The serious injury requirement is applicable in any of those scenarios. If a plaintiff does not have a serious injury, there is no reason for the tortfeasor to pay the limits of his or her policy.

We agree with the statement of the Second Department in *Raffellini* that the regulations and the provision in the insurance policy impose a requirement that "is less favorable to the insured than [Insurance Law §] 3420 (f) (2) and should not be given effect" (36 AD3d at 105). In concluding otherwise, the majority states that "[i]t was not the intent of the Legislature to provide a person injured by an underinsured driver with greater rights or a lesser burden of proof than an injured person otherwise would have against an adequately insured driver, when both actions arise from the same incident." In our view, the majority's statement is flawed because a person injured by an underinsured driver already is required to meet the serious injury threshold in an action against the tortfeasor. Therefore, by omitting that threshold requirement for a SUM claim, the Legislature is not affording the person injured by an underinsured driver any greater rights or any lesser burden of proof. Regardless of whether a person is injured by an underinsured driver or an adequately insured driver, the person must meet the serious injury threshold in an action against the driver, and an action against the underinsured driver is a condition precedent to any claim for SUM benefits. In upholding the regulations, the majority actually is imposing a greater burden of proof on the person injured by an underinsured driver than a person injured by an adequately insured driver. A person injured by an underinsured driver would first have to establish that he or she sustained a serious injury in order to obtain a judgment or settlement from the tortfeasor and would have to make that showing again in the breach of contract action against his or her insurer for SUM benefits.

In sum, we conclude that the court did not err in directing a verdict on the issue of serious injury because plaintiffs were not required to make that showing in the first instance.

## IV

The remaining issues raised by defendant do not require a new trial. Defendant contends that the award of damages for Michael Meegan's derivative claim must be vacated because the SUM endorsement does not provide coverage for derivative losses. There is no need to reach defendant's contention, however, because derivative damages awarded for loss of consortium must be added to the direct damages awarded in determining the limit of liability for bodily injury sustained by one person (*see Champagne v State Farm Mut. Auto. Ins. Co.,* 185 AD2d 835, 837 [1992], *lv denied* 81 NY2d 704 [1993]). In other words, the SUM coverage under this policy was $250,000 per person and $500,000 per accident, and the award of damages for plaintiff and the derivative damages for Michael Meegan cannot exceed $250,000 because plaintiff and Michael are considered one person in this context. Because the award to plaintiff exceeded $250,000, there cannot be an additional amount awarded to Michael Meegan.

There is also no need for a new trial based on the court's having granted plaintiffs' motion in limine in part by precluding an expert from testifying with respect to an entry in the medical records of one of plaintiff's physicians. Assuming, arguendo, that the court erred in granting that part of plaintiffs' motion, we conclude that the error is harmless. The entry in the medical records stated that plaintiff "has TMJ problems," and there was other evidence before the jury concerning plaintiff's preexisting condition of TMJ dysfunction.

We agree with defendant and the majority that plaintiffs' underinsurance claim is limited to $225,000, i.e., $250,000 less an offset of $25,000 for the payment made on behalf of the other driver. Plaintiffs' reliance on *Acquista v New York Life Ins. Co.* (285 AD2d 73 [2001]) is misplaced. In that case, the plaintiff asserted causes of action for, inter alia, breach of contract and bad faith by defendant insurer (*id.* at 75). The First Department determined that the cause of action alleging bad faith could not stand as a "distinct tort cause of action [but that the] allegations may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract" (*id.* at 82). In this case, however, plaintiffs did not allege bad faith by defendant and thus cannot recover consequential damages beyond the limits of the policy.

## V

Accordingly, we would affirm the order in appeal No. 1 and modify the judgment in appeal No. 2 by granting defendant's posttrial motion in part and reducing the verdict to $225,000.

LUNN and PINE, JJ., concur with PERADOTTO, J.; CENTRA, J., and GORSKI, J.P., dissent in part and vote to modify in accordance with a separate opinion by CENTRA, J.

It is hereby ordered that the judgment so appealed from be and the same hereby is reversed on the law without costs, the cross motion for a directed verdict is denied in part, the posttrial motion is granted in part, the verdict is set aside, and a new trial is granted on the issues of serious injury and damages.