OPINION OF THE COURT
Michael A. Ciaffa, J.
When a court is presented with a default judgment application, it is tempting to simply grant it and move on to other pressing matters. However, the rule of law, as I understand it, demands more. The court’s duty is not “ministerial.” (See e.g. McGee v Dunn, 75 AD3d 624, 624 [2d Dept 2010].) If subject matter jurisdiction is lacking, the court should “refuse to proceed further and [should] dismiss the action.” (See Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718 [1997], quoting Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324 [1889].) No matter how meritorious a claim may be, the court in such a case would have no power to grant judgment upon it. Likewise, a court may grant a default judgment by law only if the moving party’s pleadings and proof establish one or more “viable” causes of action. (See McGee v Dunn, 75 AD3d at 624.)
The instant case puts these principles to a test. On multiple points, the plaintiffs motion, while unopposed, presents facts and circumstances that raise a series of challenging issues. Although the end result of the court’s analysis is to sustain jurisdiction, that conclusion requires extended discussion. And in the end, deficiencies in plaintiffs pleading and proof result in the denial of the motion, without prejudice to renewal. These issues are discussed, below, in turn.
Plaintiff, Utica Mutual Insurance Company, moves for a default judgment against defendant, Michael Andre Lynton, based upon Mr. Lynton’s failure to answer the complaint following service of process pursuant to CPLR 308 (2). The complaint proceeds on the premise that plaintiff “is subrogated to all rights of RAMONA ESTEVEZ as against the Defendant arising out of the claimed occurrence.” The subject “occurrence” was a motor vehicle accident between a vehicle operated by Ms. Estevez and a second vehicle owned and operated by Mr. Lynton. According to plaintiffs papers, it made basic no-fault payments “to or on behalf of’ Ms. Estevez, totalling $15,197.22. It also paid Ms. Estevez $6,000 in settlement of her claim for supplementary uninsured motorist benefits.
Monetary claims brought in this court are ordinarily limited to cases “where the amount sought to be recovered . . . *807 does not exceed $15,000.” (UDCA 202.) However, “[w]here several causes of action are asserted in the complaint, and each of them would be within the jurisdiction of the court if sued upon separately, the court shall have jurisdiction of the action.” (UDCA 211.)
Although the latter statute has long been a part of the law governing proceedings in this court, its constitutionality remains open to question. In Mandel v Kent (70 AD2d 903, 903 [2d Dept 1979]), the Appellate Division held that the County Court’s jurisdictional limit applied “to the entire complaint rather than each cause of action.” It did so based on its reading of article VI, § 11 of the NY Constitution, which provides that the County Court’s jurisdiction “shall extend not to ‘causes of action’ but only to ‘actions’ where the amount sought to be recovered is beneath a certain amount.” (See Westbury Wholesale Produce Co. v Maine Maid Inn, 186 Misc 2d 911, 914 [Nassau Dist Ct 2000] [discussing Mandel].)
In Westbury Wholesale Produce Co. v Maine Maid Inn (supra) Nassau District Court Judge Kenneth Gartner carefully considered whether to apply Mandel’s logic to cases brought under the Uniform District Court Act. In a comprehensive, well-reasoned opinion, he concluded that the Appellate Division, Second Department, “would not extend the Mandel holding to District Court — an extension which would require the Appellate Division to of necessity declare UDCA 211 . . . unconstitutional as in contravention of . . . the New York State Constitution.” (186 Misc 2d at 916.)
Since Judge Gartner’s decision was handed down more than a decade ago, not a single published decision has cited Mandel. Nor have any court decisions questioned the ruling made by Judge Gartner in Westbury Wholesale Produce Co., respecting the continued applicability of UDCA 211 to District Court proceedings. Accordingly, the court concludes that Mandel does not nullify UDCA 211, and therefore turns to the question of whether plaintiffs complaint properly pleads and presents “several causes of action,” each of which are within the court’s jurisdictional limits. (UDCA 211.)
The complaint, in this case, separately asserts two causes of action. The first cause of action seeks judgment holding defendant liable for $15,000, based upon plaintiffs payment of basic no-fault benefits. The second cause of action seeks judgment holding defendant liable for an additional $6,000, based upon its settlement of Ms. Estevez’s supplementary uninsured motorist claim for pain and suffering.
*808 Although plaintiffs papers admit that plaintiff voluntarily reduced its claim for repayment of basic no-fault benefits to $15,000 “to comply with the jurisdiction of this Court,” that reduction begs the question of whether the court has jurisdiction to consider claims totaling $21,000 in the aggregate. Notwithstanding defendant’s default in answering the complaint, this court is empowered to consider plaintiffs motion only if the claims fall within the ambit of UDCA 211, and on that point, plaintiff s motion raises a second difficult and complex threshold issue.
At first blush, the assertion of separate “causes of action” in the complaint brings the case squarely within the literal language of UDCA 211. Each “cause of action” seeks damages of $15,000 or less ($15,000 under the first cause of action and $6,000 under the second cause of action).
However, decisions of other courts make plain that a lower court’s jurisdictional limits cannot be circumvented by the simple expedient of splitting a claim into separately stated “causes of action.” The Civil Court’s decision in Kemper v Transamerica Ins. Co. (61 Misc 2d 7 [Civ Ct, NY County 1969]) is illustrative.
In the Kemper case, plaintiffs complaint asserted four “causes of action” against an insurer, arising from a fire loss. Four categories of damages were sought, each under a different policy provision. Each “cause of action,” on its face, sought damages within the jurisdictional limits of the Civil Court. Nevertheless, the total damages sought by plaintiff, arising from “a single fire,” exceeded the court’s monetary limit.
The Civil Court (Stecher, J.) concluded, on these facts, that the complaint asserted only a single “cause of action.” In holding that it lacked jurisdiction as a result, the Court acknowledged that the issue was “not a matter free from difficulty.” (61 Misc 2d at 8.) As explained in the decision, the words “cause of action” could have different meanings in different contexts. Quoting from a Court of Appeals decision involving a statutory pleading rule requiring that “each cause of action must be separate and numbered” (Payne v New York Susquehanna & W. R.R. Co., 201 NY 436, 440 [1911]), the Civil Court adopted the following definition for the purpose of assessing its jurisdiction: “If the facts alleged show one primary right of the plaintiff, and one wrong done by the defendant which involves that right, the plaintiff has stated but a single cause of action.” (61 Misc 2d at 8, quoting Payne, 201 NY at 440.)
*809 Applying this definition, the Civil Court concluded that the complaint raised only one cause of action:
“In the case under consideration the primary right is to be paid under the contract for the loss allegedly sustained in a single fire; and the defendant’s wrong is the failure to make that payment. There can be little doubt that various obligations of payment assumed under a single written contract accruing at the same time constitute but a single cause of action (Wolf v. Wolf, 22 A D 2d 678; 5 Williston, Contracts [rev. ed.], § 1291). It is thus apparent that the plaintiffs claim . . . although stated in what appeared to be four separate causes of action are in fact one cause of action which exceeds the jurisdictional limitation on this court.” (61 Misc 2d at 8-9.)
The instant case involves similar, but not identical, factual circumstances. Plaintiffs claims, although separately stated in two causes of action, each involve “one wrong done by the defendant,” namely, negligent operation of a motor vehicle by defendant, causing a collision that injured plaintiffs insured. As a result, plaintiffs insured applied for, and received, insurance benefits under the supplementary uninsured motorist and basic no-fault portions of her insurance policy. Under the provisions of that policy, plaintiff obtained subrogation rights which it now asserts in this action.
Just like in Kemper, it appears that plaintiffs claim, although set forth in two separate “causes of action,” may be viewed as stating “but one case of action which exceeds the jurisdictional limit” for claims made in this court. (Kemper, 61 Misc 2d at 9.) If so viewed, the court would lack the power to grant the requested relief.
Notably, in Kemper, the Civil Court was able to transfer the action directly to the Supreme Court, pursuant to article VI, § 19 (f) of the NY Constitution. However, this court lacks similar authority. (Compare NY Const, art VI, § 19 [i].) As a consequence, if the claims in this case are found to exceed the court’s jurisdictional limits, the court would have no choice but to dismiss the proceeding. (See Fry v Village of Tarrytown, 89 NY2d at 718, citing Robinson v Oceanic Steam Nav. Co., 112 NY at 324.)
Ironically, if the action were to be dismissed, and then refiled in the Supreme Court, that court could then transfer the case back to the District Court, as allowed by NY Constitution, article *810 VI, § 19 and CPLR 325 (d). In that event, this court would be empowered, under CPLR 325 (d), to determine the claims without regard to otherwise applicable monetary limits.
Should plaintiff have its claims bounced back and forth, like this, to obtain determination of its claims against defendant? I think not. Although the jurisdictional limits of UDCA 202 must be respected, the language of UDCA is broad enough to encompass the subject claims.
As recognized in Kemper, the phrase “cause of action” can have different meanings in different contexts. No hard and fast definition has been applied by our state’s courts. Although allegations emanating from “a single occurrence or transaction” often have been deemed to be part of one cause of action, “distinct causes of action” just as certainly may arise from a single transaction or occurrence. (See 1 NY Jur 2d, Actions § 40.) Indeed, it appears well settled that “[w]here a single wrongful act causes injury to both the person and property of another, the party wronged has, and can separately sue upon, distinct causes of action.” (1 NY Jur 2d, Actions § 57; see also 103 NY Jur 2d Torts § 3 [“A single tortious act which causes damage to a person and to property gives rise to separate causes of action”].) “Similarly, a single wrongful act affecting different interests . . . may give rise to a separate cause of action in favor of the owner of each such interest.” (1 NY Jur 2d, Actions §57.)
Not surprisingly, “conflicting decisions in different jurisdictions” have sometimes confounded our state’s courts in determining whether one or more causes of action are being advanced. (See Reilly v Sicilian Asphalt Paving Co., 170 NY 40, 43, 43-45 [1902].) But more recent decisions draw a clear distinction between an injured person’s cause of action for pain and suffering, on the one hand, and an insurer’s related cause of action for recoupment of payments for extended economic loss. (See Record v Royal Globe Ins. Co., 83 AD2d 154 [2d Dept 1981].) The issue in Record v Royal Globe was whether an insured’s release of a claim for personal injuries impaired the insurer’s subrogation rights. While the decision did not address issues of jurisdiction, the court’s analysis hinged upon its recognition that a subrogated claim for “economic loss” (i.e. payments for lost earnings and medical expenses) was very different from a “noneconomic” claim for pain and suffering. Since these claims were considered to be separate and distinct, the Court concluded that the release by Royal Globe’s insured of *811 her noneconomic claims for pain and suffering had not impaired the insurer’s subrogation rights respecting economic loss.
Viewing the claims in this case in a similar manner, it is apparent that the complaint does, indeed, state separate and distinct causes of action. Although both claims are asserted by the same party, under provisions of the same insurance policy, the first cause of action, for basic no-fault benefits, involves “economic losses” (e.g. medical expenses), whereas the second cause of action, for supplementary uninsured motorist benefits, involves payments for the insured’s pain and suffering.
Accordingly, the court concludes, on balance, that it has jurisdiction over plaintiffs claims. Since the complaint can be read as properly asserting two causes of action, each of which is within this court’s jurisdiction (see UDCA 211), it will proceed to determine the merits of plaintiffs default judgment application.
Plaintiffs motion includes proof of service of the summons and complaint upon defendant, proof of his default, and proof of the facts constituting plaintiffs claims. (See CPLR 3215 [f].) Nevertheless, before a judgment by default can be granted, the court must be provided with sufficient facts to establish that the plaintiff possesses legally viable causes of action. (See e.g. McGee v Dunn, supra; Beaton v Transit Facility Corp., 14 AD3d 637 [2d Dept 2005].)
With respect to the first cause of action, the complaint, as amplified by plaintiffs moving affidavits, includes sufficient allegations that defendant was not a “covered person” under no-fault, since he lacked insurance for his vehicle on the date of the accident. Such allegations are “an essential element of an insurer’s right to recoup first-party benefits” in a subrogation action. (See Country-Wide Ins. Co. v 3-M Prod. Sales, 96 AD2d 569, 569 [2d Dept 1983].)
However, an equally essential element of the cause of action is an allegation that plaintiffs insured failed to commence a lawsuit, of her own, seeking damages for personal injuries arising from the accident. (See Country-Wide Ins. Co. v 3-M Prod. Sales, supra; see also Insurance Law § 5104 [b].) If such an action has been brought, the insurer’s remedies, by law, would be limited to its lien rights against any recovery obtained by verdict or settlement of that action. (Insurance Law § 5104 [b].)
On the other hand, if the insured failed to commence such an action within two years after accrual of her claim, then, and *812 only then, would the insurer have “a cause of action for the amount of first party benefits paid or payable against any person who may be liable to the covered person [i.e. its insured] for [her] personal injuries.” (Insurance Law § 5104 [b].) Although the facts of this case involve the filing of a lawsuit by the insurer more than two years from the date of the accident, plaintiffs papers are silent as to whether its insured did or did not file her own lawsuit against Mr. Lynton.
In the absence of allegations addressing the issue, the court will not assume, from such silence, that plaintiffs first cause of action was properly brought under Insurance Law § 5104 (b). Consequently, plaintiffs request for judgment by default on the first cause of action is denied, without prejudice to resubmission upon additional proof respecting whether its insured did or did not commence her own personal injury action which might overlap with plaintiffs claim for first-party no-fault benefits in this subrogation lawsuit.
Plaintiffs allegations and proof respecting its second cause of action suffer from a different defect. The latter claim seeks recovery of supplementary uninsured motorist benefits that plaintiff paid to its insured in settlement of her claim for pain and suffering. Although the “serious injury” requirements- of Insurance Law § 5104 (a) do not expressly preclude claims for pain and suffering by a covered person against a noncovered person, this case does not present such a direct claim for pain and suffering. Rather, it involves a claim by an insurer arising from its payment of supplementary uninsured motorist benefits to Ms. Estevez for a “non-economic loss,” pursuant to Insurance Law § 3420 (f) (2) and the Insurance Superintendent’s Regulations (11 NYCRR 60-2.3 [f]). Under applicable case law holdings, Ms. Estevez could not have properly obtained payment of uninsured motorist benefits for her pain and suffering without proof of serious injury. (See Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d 196 [2007]; see also Meegan v Progressive Ins. Co., 43 AD3d 182, 184-186 [4th Dept 2007].)
Should plaintiff be able to sue the defendant to recoup supplementary uninsured motorist payments without proof that its insured, in fact, sustained a serious injury? In the absence of case law holding otherwise, the court is not prepared to presuppose such a result. While it can be argued that the insurer is simply standing in the insured’s shoes, the law as written expressly gives the insurer only a limited right to pursue a subrogation claim against a noncovered person, as authorized *813 by Insurance Law § 5104 (b), for basic first-party no-fault benefits, and to the extent an insurer acquires additional subrogation rights by paying supplementary uninsured motorist benefits pursuant to Insurance Law § 3420 (f), such payments are properly made only in cases involving serious injuries. Consequently, an insurer suing a noncovered person upon such a subrogated claim for supplementary uninsured motorist benefits should properly be required to plead and prove the serious injury in order to obtain a judgment against the defendant on the latter cause of action.
In the instant case, notwithstanding the complaint’s conclusory statement that plaintiffs insured “was caused to sustain personal injuries,” the complaint includes no factual allegations which might satisfy the requirements of Insurance Law § 5102 (d), defining the sort of “serious injuries” which could form the basis for meeting the statutory definition. Moreover, the medical records submitted with plaintiffs motion do not suffice under the circumstances, since no effort is made to use the records to demonstrate how the injuries and treatments brought the case within the statutory definition of a serious injury. Absent proof, by party affidavit (see CPLR 3215 [f]), that the personal injury claim at issue was “serious” enough to satisfy the No-Fault Law’s threshold, the court cannot conclude that the plaintiff has the right, by law, to recover its payment to its insured under the subrogation theory asserted.
Accordingly, where, as here, an insurer neither properly pleads, nor proves by party affidavit, that its insured suffered a true “serious injury” that justified payment of supplementary uninsured motorist benefits for pain and suffering, it is not entitled, upon a default, to obtain a judgment on the claim merely because the complaint includes a conclusory sentence alleging that plaintiffs insured suffered undefined injuries in the accident. Here, too, that failure of proof requires denial of the motion without prejudice.
For the foregoing reasons, the court concludes that it has jurisdiction to determine claims by plaintiff that exceed $15,000 in the aggregate. However, due to deficiencies in plaintiff’s pleading and proof, the court must deny plaintiffs motion, without prejudice to renewal.